# Mutual Fire Ins. Co. of Montgomery County, Pa., Plff. in Err., v. Mark De Haven.

A policy of insurance upon "stocks, crops, and farming implements," issued by a company authorized to make insurances against losses by storms

and hurricanes on "hay, grain, and other agricultural products," "in barns, stacks, and otherwise," is presumed intended to insure a growing crop against injury by a storm.

(Decided May 3, 1886.)

Error to the Common Pleas of Montgomery County to review a judgment for plaintiff in an action upon a policy of insurance. Affirmed.

Mark De Haven was the holder of a policy of insurance in the Mutual Fire Insurance Company of Montgomery county.

The company insured, by virtue of a supplemental act passed February 14, 1867, against losses by storms or hurricanes.

The material clause in the policy on which suit was brought is as follows: "Stock, crops, and farming implements, $1,200."

There was a hailstorm on May 22, 1883, and a field of standing and growing wheat was partially destroyed.

De Haven demanded of the company payment for his loss; the company denied that he had any insurance on growing crops; De Haven sued for this loss and the court held that the word "crops" included growing crops, and directed a verdict for plaintiff. Defendant moved for a new trial, and BOYER, P. J., delivered the following opinion:

The plaintiff effected an insurance of his crops, from loss by fire or storm in the defendant company. He suffered a loss by a hailstorm beating down his grain growing in the field. The defendant set up the defense that the insurance did not cover the grain while still growing, but only grain already harvested. This was the only contention upon the trial.

The charter under which the defendant corporation was originally incorporated authorized insurance against fire only; but by a supplemental act of assembly, approved February 14, 1867, the company was authorized to insure against losses by "storms and hurricanes" under the same rules and regulations and with the same force and effect and with respect to the same species of property as was therefore insured against loss by fire. And the 2d section of said act provided that all existing and outstanding policies of insurance issued by said corporation shall be deemed and considered as insuring holders thereof against losses by storm or hurricanes, as well as by fire, in respect to the prop-

erty and effects mentioned and referred to in the said policies, with the like force and effect as though the act to which this is a supplement had authorized such insurance, and such losses by storms or hurricanes had been specially covered by said policies. The charter, § 5, provides for insurance on "hay, grain, and other agricultural products in barns, stacks, or otherwise."

Where, therefore, "crops" are insured in general terms, as in this policy, it must be taken to include all which in the common and appropriate use of language is comprehended under that description. In the latest dictionary, published in 1880, a "crop" is defined as "the top end or highest part of anything, especially of a plant; also that which is cropped, cut, or gathered from a single field, or of a single kind of grain or fruit, or in a single season; especially the valuable product of what is planted in the earth; fruit, harvest." In the edition published in 1856 "crop" is also defined as "corn and other cultivated plants while growing,—a popular use of the word."

Although this latter definition has been omitted from the later editions of Webster, the Imperial Dictionary, lately revised and published in four volumes in London and New York, repeats the definition as to growing crops above quoted, *viz.:* "Corn and other cultivated plants while growing,—a popular use of the word."

As applied to agriculture, the most general definition of "crop" seems to include that part of any agricultural product which is susceptible of being cropped for the uses of husbandry, whether already gathered or progressing toward maturity for that purpose.

After all, what is included under the general name of "crops" is to be determined by the sense in which it is ordinarily used or may be reasonably understood in the connection in which it happens to be placed, rather than by nice philological distinctions derived from its original roots. It is certainly common to speak of the fruits of the earth as "crops" while still growing in the fields unharvested.

"The condition of the crops" is a familiar newspaper heading for a description of wheat, rye, corn, and oats still growing in the fields, unharvested. So "crops in the ground" or "growing crops," is a familiar expression in popular use, and often advertised to be sold by that designation.

The 5th section of the act incorporating the defendant enu-

merated among insurable property "grain or other agricultural products in barns, stacks, or otherwise;" clearly showing that grain and other agricultural products were insurable when gathered into barns or stacks, but also otherwise.

"Otherwise" is a largely embracing word and would seem to comprehend every situation in which grain might exist. While growing in the field it was already an "agrcultural product," although not yet matured. If still unharvested it was more liable to damage by storm, and therefore the more desirable to be insured against such accident. When gathered and stored in barns and stacks there would be comparatively little danger from storms.

The whole question turns upon whether or not grain growing in the field may in any reasonable and accepted sense be described as a "crop." If, as has been said, the terms by general usage are applicable both to grain gathered and grain growing, it is decisive of the question in favor of the insured. It is well settled that where an insurer introduces an expression having two meanings,—one larger in its significance and the other more limited,—he cannot, after an acceptance of the policy by the other contracting party, set up the narrower construction. And where a general name is used it is to be interpreted in the most enlarged sense. It is the insurer's own language and must be interpreted most favorably to the insured. Wharton, Contr. § 40, p. 670; Western Ins. Co. v. Cropper, 32 Pa. 351, 75 Am. Dec. 561; Franklin F. Ins. Co. v. Brock, 57 Pa. 74; Marvin v. Stone, 2 Cow. 806; Rann v. Home Ins. Co. 59 N. Y. 389; Allen v. St. Louis Ins. Co. 85 N. Y. 473.

Under this view we are of opinion that the crops of the plaintiff growing in the field were covered by his policy, and that his recovery was proper.

And now, June 29, 1885, the motion for a new trial is overruled by the court.

Defendant brought error.

*Charles Hunsicker* for plaintiff in error.

*H. B. Dickinson* and *George N. Corson* for defendant in error.

PER CURIAM:

The property insured is described as "stock, crops, and farm-

ing implements." The precise location or condition of any one is not described. The company is authorized to make insurances against losses by storms and hurricanes on hay, grain, and other agricultural products, "in barns, stacks, or otherwise."

It had an undoubted power to insure the articles of property specified, whether they were in the fields or housed in barns. Crops are more exposed to storms and hurricanes while growing in the field than after they are put in stacks or barns. The language in the policy is broad enough to cover growing crops. Such, we think, was the manifest intent of the parties to this insurance.

Judgment affirmed.